## Richmond

### Roanoke Gas Company v. Commonwealth of Virginia, State Corporation Commission.

April 22, 1977.

Record No. 760982.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Wilbur L. Hazlegrove (Hazlegrove, Dickinson & Rea,* on briefs), for appellant.

*Richard D. Rogers, Jr. (Edward L. Flippen,* on brief), for appellee.

*Amicus Curiae: Washington Gas Light Company (John W. Riely; Michael E. Hooton; Lewis Carroll [D. C.]; Carl W. Belcher [D. C.]; Hunton & Williams,* on briefs), for appellant.

Per Curiam.

On August 18, 1975, Roanoke Gas Company (hereinafter, Roanoke) filed an application with the State Corporation Commission describing certain transactions Roanoke proposed to enter into with a subsidiary corporation, Diversified Energy Services, Incorporated (hereinafter, Diversified). Roanoke prayed for approval of "such of the arrangements . . . as may be required by law to be approved by the

Commission." After a hearing, the Commission, on July 1, 1976, disapproved the proposed transactions and denied Roanoke's application.

Roanoke is a public service company which, under regulation by the Commission, distributes natural gas in the City of Roanoke and surrounding territory. Because of recurring shortages of natural gas during periods of peak demand, Roanoke has been unable to meet its distribution requirements. Prior to 1970, it solved this problem by introducing propane gas into its mains. In 1970, Roanoke put into service a liquified natural gas facility, which enabled it to reduce, but not to eliminate, its reliance upon propane. Since 1973, Roanoke has purchased propane in excess of its needs and has marketed the surplus in bulk. Unlike natural gas, the sale of propane is not regulated by the Commission.

Recently, Roanoke has decided to alter its mode of marketing propane. For this purpose, it has formed Diversified, which is not yet organized. Roanoke proposes to acquire all the stock of Diversified; thereafter, the two corporations would share the same directors and officers, and Roanoke would supply the subsidiary all required managerial and operating services.

In return for its stock, Diversified would receive all Roanoke's equipment used for the distribution of propane, all Roanoke's stored propane in excess of 200,000 gallons, and "sufficient cash" for Diversified's operating funds. After organization of the subsidiary, Roanoke would assign to Diversified its propane supply contract and its propane customer contracts, would lease to Diversified its excess propane storage tanks, and would either grant or guarantee loans to Diversified up to $100,000 at any one time. In the future, Roanoke would sell propane only as a supplement to its natural gas requirements; it would receive its required propane from Diversified at cost.

The Commission held that Roanoke's acquisition of Diversified's stock was prohibited by the provisions of Va. Code § 13.1-50. The Commission reached this conclusion because, it said, Diversified's proposed distribution of propane in bulk would not be, within the meaning of § 13.1-50, "related to or incidental to" Roanoke's public service business as a natural gas

distributor. The pertinent portion of § 13.1-50 provides as follows:

"No corporation organized under this Act to conduct the business of a public service company shall have general business powers in this State. Corporations organized under this Act to conduct the business of a public service company may, however, conduct in this State other public service business or nonpublic service business so far as may be related to or incidental to its stated business as a public service company . . . . Nothing in this paragraph shall limit the powers of such corporation in respect of the securities of other corporations."

The Commission concedes that, when Roanoke uses propane to supplement its supply of natural gas, the propane activity is related to Roanoke's stated business as a public service company. According to the Commission, however, when Roanoke purchases propane in excess of its needs and sells the surplus in bulk, it engages in an unrelated business. And the situation would be unchanged, the Commission asserts, by the transfer of the bulk propane business to Roanoke's subsidiary, Diversified.

Roanoke argues that the distribution of propane in bulk by Diversified would constitute a related business. But even if the subsidiary's business proves unrelated, Roanoke says, it has authority, without Commission approval, to acquire Diversified's stock. This authority, Roanoke contends, derives from several statutes: Va. Code § 56-2, which provides that every public service corporation shall be governed by the provisions of Title 56 (relating to public service companies specifically) and of Title 13.1 (pertaining to corporations generally); Va. Code § 13.1-2.1(g), which provides that every corporation shall have power to acquire the securities of other corporations "organized for any .purpose"; and Va. Code § 13.1-50, mentioned above, which, while containing the "related to or incidental to" limitation, provides further that "[n]othing in this paragraph shall limit the powers of such [public service] corporation in respect of the securities of other corporations."

We can assume, although we do not decide, that a public service company does not need Commission approval of the bare purchase of a subsidiary's stock, whether the subsidiary's

activity is related or unrelated to the parent's stated business as a public service corporation. But it does not follow that Roanoke is entitled to reversal of the Commission's decision in this case. Roanoke's acquisition of Diversified's stock in intertwined with other proposed transactions for which, as the Commission ruled, approval is required under the Affiliates Act, Va. Code §§ 56-76 to -87. And, as the Commission ruled further, the Affiliates Act imposes upon a public service company a burden Roanoke did not carry, viz., to demonstrate that the proposed transactions with affiliated companies will serve the public interest.

Virginia Code § 56-76(e), a part of the Affiliates Act, defines an "affiliated interest" of a public service company to include "[e]very corporation in which two or more of the corporate directors are common to those of such public service company." Thus, because the two corporations in this case would share the same directors, Diversified qualifies as an affiliated interest of Roanoke. Section 56-77, another part of the Affiliates Act, lists certain transactions between affiliated interests which are subject to Commission regulation. This section provides:

"No contract or arrangement providing for the furnishing of management, supervisory, construction, engineering, accounting, legal, financial, or similar services, and no contract or arrangement for the purchase, sale, lease or exchange of any property, right or thing, other than those above enumerated, or for the purchase or sale of treasury bonds or treasury capital stock made or entered into between a public service company and any affiliated interest shall be valid or effective unless and until it shall have been filed with and approved by the Commission. It shall be the duty of every public service company to file with the Commission a verified copy of any such contract or arrangement, regardless of the amount involved . . . ."

Virginia Code § 56-82, another part of the Affiliates Act, provides that nó public service company, without prior Commission approval, shall make or guarantee any loan of money to an affiliated interest.

Roanoke's application included proposals for loans, guaranties, lease arrangements, assignments of contract rights, and the furnishing by Roanoke of management, supervisory, construction, engineering, accounting, legal, financial, or similar

services. These matters are of the very type for which §§ 56-77 and 56-82 of the Affiliates Act require Commission approval. They are matters with respect to which public interest is the keystone of Commission action. Va. Code §§ 56-78, -80, -82. And, in this context, an important aspect of public interest is assurance "that an affiliated company of a regulated utility does not receive unjust benefits, to the detriment of the utility's customers." Brasfield, *Regulation of Electric Utilities by the State Corporation Commission*, 14 Wm. & Mary L. Rev. 589, 599 (1972-1973).

Roanoke states in its application, and repeats the proposition in its appellate brief, that "[i]t is not contemplated or proposed by Roanoke Gas that the foregoing arrangements [with Diversified] be made the basis of a written agreement or agreements." Yet, § 56-77 requires Roanoke "to file with the Commission a verified copy of any such contract or arrangement, regardless of the amount involved."

Furthermore, as the Commission points out in its appellate brief, "[n]o evidence was provided ... upon which the Commission could ascertain how Roanoke would allocate the costs of the various services provided to Diversified; no evidence was provided to suggest that a return would be forthcoming to Roanoke for the services proposed to be rendered, other than the return Roanoke contends it would receive on leased tanks and other equipment; and insufficient evidence was presented on the terms and conditions of proposed loans to Diversified." And, as the Commission notes further, "[n]either Roanoke's application, nor its evidence, sufficiently detailed the proposed arrangements so as to enable the Commission in any later rate proceeding to determine the cost of service for [Roanoke's natural gas] customers."

In short, we agree with the Commission that it was furnished "no basis for determining whether the proposed arrangements were in the public interest." For this reason, the decision of the Commission will be affirmed.

*Affirmed.*