## Richmond

### LYNCHBURG GAS COMPANY, ET AL. v. COMMONWEALTH OF VIRGINIA, STATE CORPORATION COMMISSION.

April 22, 1977.

Record No. 761068.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

S. *Bolling Hobbs (Theodore J. Craddock; Wilbur L. Hazlegrove; Caskie, Frost, Hobbs & Hamblen; Hazlegrove, Dickinson & Rea, on briefs), for appellants.*

*Edward L. Flippen (Richard D. Rogers, Jr., on brief), for appellee.*

Per Curiam.

This case is companion to *Roanoke Gas Company* v. *Commonwealth of Virginia, State Corporation Commission, ante,* 217 Va. 850, 234 S.E.2d 302 (1977). There, we upheld the State Corporation Commission's jurisdiction over certain proposed transactions between the gas company and a subsidiary, and we affirmed, on public interest grounds, the Commission's disapproval of the transactions.

The present controversy arose when, on August 28, 1975, Lynchburg Gas Company (hereinafter, Lynchburg) and Lynco Development Corporation (hereinafter, Lynco) filed with the Commission an application setting forth a proposal by

Lynchburg to purchase 9,000 shares of the common stock of its wholly-owned subsidiary, Lynco. The applicants requested the Commission either to approve the proposal or to rule that it had no jurisdiction of the matter. After a hearing, the Commission, on July 1, 1976, denied the application.

Lynchburg is a public service company which, together with two of its subsidiaries, Virginia Pipe Line Company and Citizens Gas Company, distributes natural gas in several areas of this state. In distributing natural gas, Lynchburg is regulated by the Commission.

Lynchburg's third subsidiary, Lynco, was organized in 1960. In that year, the Commission approved an application for Lynchburg to purchase 1,000 shares of Lynco's stock at $10.00 per share to enable the subsidiary to investigate the underground storage of natural gas. When the venture proved unsuccessful, Lynco became inactive. Then, in 1964, Lynchburg reactivated Lynco, and the subsidiary began distributing fuel oil and propane to those interruptible customers of Lynchburg whose natural gas requirements could not be met because of shortages. Unlike natural gas, the sale of fuel oil and propane is not regulated by the Commission.

In 1965, Lynchburg successfully applied to the Commission for approval to lend Lynco $10,000, the application stating that Lynco distributed fuel oil and propane and that proceeds of the loan would be used as working capital for the subsidiary. From 1965 until sometime in 1971, Lynco distributed limited quantities of both fuel oil and propane. In 1971, however, it stopped selling propane.

Throughout its existence, Lynco's operations have been conducted from Lynchburg's home office. A retired former employee of Lynchburg is engaged "on a part-time basis . . . in the Lynco operations." In addition to sharing physical facilities, Lynchburg and Lynco have the same corporate directors and officers.

Recently, Lynchburg has decided "to greatly expand the petroleum product business" of Lynco. By providing alternate energy sources through Lynco, Lynchburg hopes not only to retain its present interruptible customers but also to attract new natural gas consumers.

To finance the expansion, Lynchburg proposes to purchase 9,000 shares of Lynco's authorized but previously unissued common stock at $10.00 per share. Lynco would apply part of the proceeds to acquire, for "around" $350,000, an existing fuel oil distributorship. Although the present owner of the distributorship is "expected" to become Lynco's operating manager, Lynchburg and Lynco would continue to share the same directors and upper-level management.

The Commission held that Lynchburg's acquisition of Lynco's stock was prohibited by the provisions of Va. Code § 13.1-50. The Commission reached this conclusion because, it said, Lynco's business of distributing fuel oil is not, within the meaning of § 13.1-50, "directly related to [Lynchburg's] public service obligation, which is to provide natural gas." The pertinent portion of § 13.1-50 provides as follows:

> "No corporation organized under this Act to conduct the business of a public service company shall have general business powers in this State. Corporations organized under this Act to conduct the business of a public service company may, however, conduct in this State other public service business or non-public service business so far as may be related to or incidental to its stated business as a public service company .... Nothing in this paragraph shall limit the powers of such corporation in respect of the securities of other corporations."

On appeal, Lynchburg argues that the distribution of fuel oil by Lynco is a related business. But even if the subsidiary's business is unrelated, Lynchburg says, the proposed acquisition of Lynco's stock is a "private" transaction, not requiring Commission approval. A public service company has authority, Lynchburg asserts, to "own securities of another corporation regardless of its business." This authority, Lynchburg contends, derives from several statutes contained in Title 13.1 (relating to corporations generally) and in Title 56 (pertaining to public service companies specifically). Va. Code §§ 13.1-2.1(g); 13.1-50; 56-2.

In the companion *Roanoke Gas Company* case, we were presented with nearly identical arguments concerning the authority of a public service company to acquire the stock of a

subsidiary. We said there we would assume, without deciding, that a public service company does not need Commission approval of the bare purchase of a subsidiary's stock, whether the subsidiary's activity is related to or unrelated to the parent's stated business as a public service corporation. We did not, however, reverse the Commission's decision, which was adverse to the gas company. We held that the stock acquisition was intertwined with other proposed transactions for which Commission approval was required by the Affiliates Act, Va. Code §§ 56-76 to -87. And we affirmed because the applicant had not carried the burden imposed by the Act of showing that the proposed transactions would serve the public interest.

We take the same view of the present case. Virginia Code § 56-76(e), a part of the Affiliates Act, defines an "affiliated interest" of a public service company to include "[e]very corporation in which two or more of the corporation directors are common to those of such public service company." Thus, because the two corporations in this case share the same directors, Lynco qualifies as an affiliated interest of Lynchburg.

Section 56-77, another part of the Affiliates Act, lists certain transactions between affiliated interests which are subject to Commission regulation. This section provides:

"No contract or arrangement providing for the furnishing of management, supervisory, construction, engineering, accounting, legal, financial, or similar services, and no contract or arrangement for the purchase, sale, lease or exchange of any property, right or thing, other than those above enumerated, or for the purchase or sale of treasury bonds or treasury capital stock made or entered into between a public service company and any affiliated interest shall be valid or effective unless and until it shall have been filed with and approved by the Commission. It shall be the duty of every public service company to file with the Commission a verified copy of any such contract or arrangement, regardless of the amount involved . . . ."

Virginia Code § 56-80, another part of the Affiliates Act, in pertinent part provides as follows:

"The Commission shall have continuing supervisory control over the terms and conditions of such contracts and

arrangements as are herein described so far as necessary to protect and promote the public interest. The Commission shall have the same jurisdiction over the modification or amendment of contracts or arrangements herein described as it has over such original contracts or arrangements . . . ."

The testimony before the Commission was vague and indefinite concerning the present or proposed operating relationship between Lynchburg and Lynco. But the record nonetheless demonstrates that some sort of contract or arrangement does exist for the furnishing by the parent to the subsidiary of management, supervisory, construction, engineering, accounting, legal, financial, or similar services. And, with Lynchburg's proposal "to greatly expand" Lynco's operations, it is obvious that modification or amendment of the contracts or arrangements would be necessary.

These matters are of the very type for which the Affiliates Act requires the Commission's approval and its continuing supervision "so far as necessary to protect and promote the public interest." Va. Code § 56-80. And, of importance in this context is assurance "that an affiliated company of a regulated utility does not receive unjust benefits, to the detriment of the utility's customers." Brasfield, *Regulation of Electric Utilities by the State Corporation Commission*, 14 Wm. & Mary L. Rev. 589, 599 (1972-73).

The Commission was furnished nothing in writing from which it could determine the true nature of the arrangement, existing or proposed, between Lynchburg and Lynco. Yet, § 56-77 requires Lynchburg "to file with the Commission a verified copy of any such contract or arrangement, regardless of the amount involved."

Furthermore, as the Commission points out in its appellate brief, "[n]o evidence was provided in the record upon which the Commission could ascertain how Lynchburg would allocate common costs and no evidence was provided to suggest that compensation would be forthcoming to the utility for services it renders to the expanded operations of Lynco." And, as the Commission notes further, "[n]either Lynchburg's application, nor its evidence in support thereof, sufficiently detailed the proposed arrangements to enable the Commission in any later

rate proceeding to determine the cost of service for [Lynchburg's natural gas] customers."

In short, we agree with the Commission that "insufficient facts were established by Lynchburg demonstrating that its proposed transactions with Lynco are in the public interest." For this reason, the decision of the Commission will be affirmed.

*Affirmed.*