## Richmond

### ROANOKE GAS COMPANY

### V.

### STATE CORPORATION COMMISSION

March 11, 1983.

Record No. 820485.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson, and Russell, JJ.

---

\* Justice Thompson participated in the hearing and decision of this case prior to the effective date of his retirement on March 2, 1983.

*Wilbur L. Hazlegrove (Hazlegrove, Dickinson, Rea, Smeltzer & Brown*, on briefs), for appellant.

*Anthony Gambardella, Assistant Attorney General; Russell W. Cunningham (Gerald L. Baliles, Attorney General; Lewis S. Minter*, on briefs), for appellee.

*Amicus Curiae: Columbia Gas of Virginia, Inc., et al. Stephen H. Watts, II (John S. Battle, Jr.; W. Carter Younger; Thomas E. Morgan, Jr. [OH]; Allan E. Roth [OH]; McGuire, Woods & Battle*, on briefs), for appellant.

STEPHENSON, J., delivered the opinion of the Court.

This is an appeal of right from a final order of the State Corporation Commission denying Roanoke Gas Company's application for an increase in rates. The application was filed pursuant to the Commission's recently established Financial Operating Review (FOR) program. The questions presented in this appeal are: (1) whether the FOR procedure used by the Commission was lawful, and (2) whether the Commission erred in considering certain interest income as part of the Company's operating revenue for rate-making purposes.

The FOR program was implemented by the Commission as a response to House Joint Resolution No. 348, adopted by the General Assembly in 1979. Acts 1979, p. 1365-66. The program is designed to insure stability in utility rates by providing for an annual review of the financial condition of utilities. As part of the program, a utility may ask for an increase in rates. In doing so, certain findings made by the Commission at the utility's last general rate case, such as the cost of equity, rate design, and some accounting adjustments, are held constant. The FOR, therefore, differs from a general rate case, and the utility retains the option of filing for a general rate increase.

The Commission employs a two-phase analysis in conducting an FOR. The first phase is a threshold financial analysis based on standards presented in a company's last general rate case. If the Commission concludes from this analysis that a utility is in good financial condition, it ends its inquiry. However, if this threshold analysis indicates rate relief is warranted, the Commission proceeds to the second phase.

In the second phase of an FOR, the Commission examines a company's accounting data. A series of adjustments are employed, including those approved in the utility's last general rate case, removal of major out-of-period items, and known changes occurring during the test period. After allowing for these adjustments, the Commission determines the rate relief to which the utility is entitled.

Roanoke Gas filed the required FOR data for the test year ending March 31, 1981, and applied for a rate increase designed to produce $400,000 in additional gross revenue. The Commission's staff analyzed the data and determined that, for the test year, the Company had a net income of $1,232,829 (including $154,877 of interest income), and an annual rate of return of 14.43%, as com-

pared with the 13% rate of return established in the last general rate case.

Invoking its first-phase analysis, the Commission determined Roanoke Gas was "in very good financial condition," and that its stockholders were receiving an adequate return on their investments. It concluded the Company had failed to justify a rate increase.

■ The Company asserts the Commission's reliance on a threshold financial analysis violates Code § 56-235.2.* The Company claims that, under this Code section, the Commission is required to make various accounting adjustments. We do not agree.

Code § 56-235.2 gives the Commission discretion to make adjustments as it "may deem reasonable." Adjustments are permitted; they are not mandated. Further, "a utility company has no vested right to demand that any particular method be used by a regulatory body in determining its rate of return." *Central Tel. Co. of Va.* v. *Corp. Comm.*, 219 Va. 863, 878, 252 S.E.2d 575, 583 (1979). The question whether adjustments should be made is within the broad discretion of the Commission. *Roanoke Gas* v. *Att. General*, 219 Va. 1072, 1080-82, 254 S.E.2d 102, 106-08 (1979). We hold the Commission did not abuse its discretion in applying a threshold test as part of its FOR procedure.

■ The Company further argues that, even if the Commission has the authority to interpose a threshold test, its imposition constitutes the promulgation of a rule or regulation of general application, which may be adopted by the Commission only after notice and hearing. Va. Const. art. IX, § 3; Code § 12.1-28. We reject this argument. As previously noted, application of the threshold standard is nothing more than a discretionary method of

---

* Code § 56-235.2 reads in part as follows:

Any rate, toll, charge or schedule of any public utility operating in this State shall be considered to be just and reasonable only if: (1) the public utility has demonstrated that such rates, tolls, charges or schedules in the aggregate provide revenues not in excess of the aggregate actual costs incurred by the public utility in serving customers within the jurisdiction of the Commission, subject to such normalization for nonrecurring costs and adjustments for known future increases in costs as the Commission may deem reasonable, and a fair return on the public utility's rate base used to serve those jurisdictional customers . . . . In determining costs of service, the Commission may use the test year method of estimating revenue needs, but shall not consider any adjustments or expenses that are speculative or cannot be predicted with reasonable certainty . . . .

determining whether a rate change is needed. It is not a rule or regulation in the constitutional or statutory sense.

The second question relates to the Commission's consideration of certain interest income. The interest income in question was derived from two principal sources. The first was money earned on refunds received from Roanoke Gas' suppliers. The suppliers increased the price of gas charged to the Company, which passed the increased costs on to its customers. The Company received a refund when the suppliers' increased rates were reduced by the Federal Energy Regulatory Commission. The Company passed the corpus of these savings on to its customers over a twelve-month period, retaining the investment income earned on the refunds in the meantime.

The second source of the interest income was the proceeds of a $3,000,000 bond issue. The Company invested the proceeds until they were needed. The debt created by the bond issue is a part of the Company's capital structure, and the money needed to retire it is part of the cost of service and is therefore ultimately paid by the Company's customers.

The Company argues it is required by the Commission to follow the Uniform System of Accounts for Gas Utilities. Under this system, income and costs not associated with providing utility services are not considered for rate-making purposes. Income interest has traditionally been considered as such "below the line" or "nonoperating" income. The Company argues the Commission is bound by its prior practices and the Uniform System of Accounts, and it therefore erred in considering the interest income as part of the Company's operating revenues.

The Commission concedes that, in the past, it has treated interest income as "below the line." However, it argues it did so because, in past years, this income was *de minimis*. (For example, in the 1980 test period, interest income amounted to $7,336.) The Commission concludes it is free to consider the Company's substantially increased interest income in determining the financial condition of the Company, and that it was proper to do so in this case, since the funds on which the interest was earned have been or will be supplied by the consumer. We agree.

The adoption of an accounting system is within the sound discretion of the Commission. *Central Tel. Co.*, 219 Va. at 878, 252 S.E.2d at 583-84. Where, as here, such action is violative of neither statutory nor constitutional law, it will not be disturbed on

appeal. While it is true the Commission had not considered interest income for rate-making purposes in the past, neither had it faced a situation where such income had increased over twenty-fold in a single year. Further, for the reasons previously stated, the decision of the Commission in this case to include interest income as part of the Company's operating revenues was not the promulgation of a rule of general application. Therefore, the Commission was not required to comply with Code § 12.1-28.

For the reasons stated, the order of the State Corporation Commission will be affirmed.

*Affirmed.*