# Westvaco Corporation

## v.

# Columbia Gas of Virginia, Inc., et al.

Record No. 850579

January 17, 1986

Present: All the Justices

*Edward L. Flippen (Donald G. Owens; John J. Carrara; Mays, Valentine, Davenport. & Moore*, on brief), for appellant.

*Deborah Vinson Ellenberg; Stephen H. Watts, II (Lewis S. Minter; Stewart E. Farrar; Thomas E. Morgan; Allan E. Roth; McGuire, Woods & Battle*, on briefs), for appellants.

CARRICO, C.J., delivered the opinion of the Court.

This is an appeal of right from an order of the State Corporation Commission granting Columbia Gas of Virginia, Inc., a rate increase. The central question on appeal is whether the Commission erred in permitting Columbia to allocate the increase among its several classes of customers by the use of a uniform surcharge, rather than an equal percentage. Finding no error in the Commission's action, we will affirm.

The record shows that on June 11, 1984, Columbia filed an application with the Commission for an "expedited increase" of $1,846,878, or 2.59%, in its rates for natural gas service. By interim order entered July 10, 1984, the Commission granted the increase, subject to refund upon final disposition of the case. In the interim order, the Commission also referred the case to a hearing examiner for inquiry and report. Code § 12.1-31.

On September 21, 1984, Westvaco Corporation filed a protest. Thereafter, the hearing examiner considered testimony and exhibits prefiled by the parties, as well as evidence taken ore tenus, and

filed his report on January 16, 1985. The hearing examiner recommended a rate increase of $1,581,461, or $265,417 less than requested, with a refund of the excess revenues generated by the greater increase allowed in the interim order. The examiner also recommended use of "the surcharge methodology" to allocate the increase among the several classes of Columbia's customers.

Both Columbia and Westvaco filed exceptions to the hearing examiner's report. In a final order entered March 27, 1985, the Commission approved the rate increase recommended by the hearing examiner, with appropriate refunds, and directed that "the allocation of [the] rate increase . . . be made using the surcharge methodology." Only Westvaco has appealed.

Prior to September 1983, Westvaco was a full-service customer of Columbia, purchasing gas directly from the utility. In that month, however, Westvaco began purchasing gas from other sources and contracted with Columbia for the latter to receive, transport, and deliver the gas so purchased. Westvaco thus became subject to Columbia's T-1, or transportation, rate; in fact, Westvaco was Columbia's first transportation customer.

The rate for transportation service was established in 1978, when Columbia first offered the service. The rate was fixed initially at 25 cents per thousand cubic feet (mcf) of gas transported and was increased to 37.3 cents in May 1983.

In its present application, Columbia proposed adding a uniform surcharge of 14.8 cents per mcf to the rate of each customer class. This would have produced a rate of 52.1 cents for the transportation class,* an increase of 39.7% compared with increases of 2.36% for residential users, 2.47% for commercial, and 2.61% for industrial.

Westvaco contends that the rate increase should have been allocated among the several customer classes on an equal percentage basis. This methodology, Westvaco says, would have produced an increase of only 2.6%, or $5,924, for the transportation class, rather than the 39.7% increase, or $87,650, produced by use of the surcharge methodology. The ultimate result, Westvaco maintains, represents "a grossly disproportionate increase in the rate Columbia . . . charges Westvaco . . . for transporting natural gas."

---

* The transportation rate as finally approved by the Commission was 50 cents per mcf.

Specifically, Westvaco complains of a finding made by the hearing examiner, and accepted by the Commission, that "the proposed transportation rate generally tracks the non-gas cost for the other customer classes." Westvaco says the finding is not supported by evidence. "How," Westvaco asks, "can it be said that the cost of transportation service 'generally tracks' non-gas cost for the other customer classes if no one has any knowledge of the cost to Columbia of providing the service?"

■ We have held, however, that cost is only one of the factors to be considered in allocating rate increases and that cost is not always a critical factor:

> Once the rate of return is determined, "[w]here, how and from what precise source or sources the increased revenue awarded is to be obtained is primarily an administrative duty and undertaking to be exercised by the Commission." . . . Implicit in this approved method of setting rates is the conclusion that non-cost factors may be considered by the Commission and unequal increases in rates for various classes of services may be granted to accomplish legitimate regulatory objectives. . . . "Factors which are considered in setting the level of rates are the cost of providing the service, the relationship between classes of customers, value of the service, marketability, encouragement of efficient use of facilities, broad availability of service and a fair distribution of charges among the users."

*Secretary of Defense* v. *C and P Tel. Co.*, 217 Va. 149, 152-53, 225 S.E.2d 414, 417 (1976) (citations omitted).

■ Furthermore, the present proceeding is not a general rate case but one for expedited rate relief. Columbia's application for expedited relief was filed pursuant to the Financial Operating Review (FOR) program, established by the Commission in response to House Joint Resolution No. 348, adopted by the General Assembly in 1979. Acts 1979, p. 1365. Concerning FOR proceedings, we have said:

> The [FOR] program is designed to insure stability in utility rates by providing for an annual review of the financial condition of utilities. As part of the program, a utility may ask for an increase in rates. In doing so, certain findings made by the Commission at the utility's last general rate case, such as

the cost of equity, rate design, and some accounting adjustments, are held constant. The FOR, therefore, differs from a general rate case, and the utility retains the option of filing for a general rate increase.

*Roanoke Gas* v. *Corporation Comm.*, 225 Va. 186, 188, 300 S.E.2d 785, 786 (1983). Hence, the issues are limited in a proceeding brought under the FOR program, and, consequently, different rules apply, *e.g.*, rate design may not be changed. *Id.*

In an FOR proceeding, the Commission first determines whether rate relief is warranted. If so, the Commission then examines the utility's accounting data, makes a series of adjustments, including those approved in the company's last general rate case, those occasioned by removal of out-of-test-period items, and those representing known changes occurring during the test period, and finally decides upon "the rate relief to which the utility is entitled." *Id.*

■ There is no suggestion in this case that the Commission did not make the examination required by the FOR program or that the accounting information it received from Columbia was insufficient for that purpose. In any event, we need cite only selected portions of the record to demonstrate that the hearing examiner was correct in saying "the proposed transportation rate generally tracks the non-gas cost for the other customer classes."

R. G. Stalnaker, Director of Rates for Columbia, emphasized the important differences between the company's full-service customer classes and its transportation class. He stated that in the full-service category, Columbia purchases gas, transports it, and delivers it to the customers. In the transportation category, the customer purchases the gas himself and Columbia merely performs a service by transporting it. Accordingly, the rates for the full-service classes include the cost of purchased gas, while the transportation rate excludes such costs. Because purchased-gas cost represents approximately 80% of Columbia's total cost of service, there will be obvious and substantial differences between percentage increases in rates including gas costs and rates excluding such costs. Stalnaker illustrated his point with this example:

|  | Present | Proposed | Proposed Increase | Percent of Increase |
|---|---|---|---|---|
| Embedded Average Cost of Gas (per mcf) | $4.898 | $4.898 | $ - | - |
| T-1 Transportation Rate (per mcf) | $ .373 | $ .521 | $ .148 | 39.68% |
| TOTAL | $5.271 | $5.419 | $ .148 | 2.81% |

Stalnaker said his example demonstrates that the percentage increase in the transportation rate is only 2.81% when adjusted by adding in the embedded average cost of gas, a methodology consistent with the manner used to calculate percentage increases of 2.36%, 2.47%, and 2.61% for Columbia's residential, commercial, and industrial classes, respectively.

In further illustration of his view, Stalnaker said that in determining the comparative impact of the proposed 14.8-cent surcharge upon the various customer classes, it was appropriate "to make the comparison from a burner tip standpoint." In this comparison, Stalnaker stated, "all customers are being compared on an equal basis," and "the burner tip increase to the transportation customer" is "very much in line" with the increases to other customers.

Finally, Ryland Y. Bailey, Senior Engineer in the Commission's Division of Energy Regulation, noted in his testimony that Columbia proposed to apply the same increase factor to the transportation rate as would be applied to the other rates. Bailey then stated:

Hence the company will be receiving the same amount of revenue increase for an Mcf of gas transported as it does for each Mcf which it sells directly. Since the company is using the same facilities, pipe lines, measuring devices, regulators, etc. in handling and measuring the transported gas as it does its own gas, which it sells directly, it seems fair that the company should derive the same revenue increase from the T-1 service as it does from its direct sales to customers. Especially so since there is some additional billing and record keeping expense associated with the T-1 service.

■ Westvaco contends next that the Commission violated its own rules applicable to FOR proceedings by allocating Columbia's rate increase according to the surcharge methodology. Westvaco quotes a 1979 Commission directive stating that "the Commission will not consider a change in basic rate design" in an FOR proceeding. This means, Westvaco maintains, "that any rate increase in an FOR is to be distributed among the customer classes on an equal percentage basis."

Westvaco cites a number of Commission decisions involving electric utilities in which FOR rate increases were allocated among customer classes on an equal percentage basis. Westvaco says these decisions have not been overruled and have been followed in a line of cases involving gas companies.

As the Commission points out on brief, however, the electric utility cases did not involve transportation services. Similarly, as Columbia states in its brief, the gas company cases cited by Westvaco "did not involve revenues attributable to transportation service or proposed increases in rates for such service."

Hence, the cases cited by Westvaco are not persuasive. Indeed, the Commission cites another line of gas company cases in which it says it has applied the uniform surcharge methodology.

■ The two lines of Commission decisions in gas company cases suggest some inconsistency. But any inconsistency may be more apparent than real, explained by the simple proposition that use of the surcharge methodology is appropriate in some cases while the percentage basis is appropriate in others, with the choice between the two dependent upon the exercise of sound discretion on the part of the Commission.

■ If, as witness Bailey indicated, one method will produce a more equitable allocation of a rate increase than another in a given case, it is not an abuse of discretion for the Commission to select the fairer method, provided, of course, that the selection preserves the element of constancy in rate design required in FOR proceedings. *Roanoke Gas*, 225 Va. at 188, 300 S.E.2d at 786. The record in this case establishes beyond doubt that the surcharge methodology was used in Columbia's last general rate case, *Application of Columbia Gas of Virginia, Inc.*, 1982 S.C.C. Ann. Rep. 543.

In its final contention, Westvaco claims that the 37.3-cent rate, purportedly in effect at the time Columbia filed its present application, was "a nullity." Westvaco maintains, therefore, that any

increase granted Columbia should be applied "to the last lawful transportation rate, 25 [cents] per Mcf." Westvaco drafts this contention from the following scenario:

The transportation rate was fixed initially at 25 cents per mcf in 1978. In a 1980 FOR, the rate was reduced to 21.6 cents. Then, in its 1982 general rate case, No. PUE820008, Columbia was authorized to increase rates effective June 24, 1982, and to allocate the increase among its several customer classes by adding a 15.7-cent surcharge to the rate for each class. Through inadvertence, however, the surcharge was not added to the transportation rate.

On April 8, 1983, Columbia addressed a letter to the Commission proposing to increase its transportation rate to 37.3 cents per mcf. The letter explained that the requested rate was derived by subtracting from the 25-cent initial rate the 1980 3.4-cent reduction and adding the 15.7-cent increase allowed in "Case No. PUE820008 effective 6-24-82."

Although Columbia had not yet secured any transportation customers, it gave notice of the proposed increase to potential customers, including Westvaco, with direction to forward comment to the Commission by May 9, 1983. On May 20, 1983, the Commission wrote Columbia, stating that "[n]o comments or objections [had] been received from any [potential] customers" and that the 37.3-cent increase was "being accepted as filed to be effective May 19, 1983."

Ryland Bailey, who handled this matter for the Commission, testified that he discussed Columbia's April 8, 1983 letter with the Chairman of the Commission "and the advertising procedure which the Company was directed to do was approved." Bailey also stated that the 37.3-cent rate "was accepted with the Commission's knowledge." Another witness testified that the May 1983 increase "was done through the administrative process."

Westvaco raised no objection to the 1983 increase until it filed exceptions to the hearing examiner's report in the present proceeding. In overruling the exceptions, the Commission held that Westvaco's failure to object to the 1983 increase upon receiving Columbia's notice constituted a waiver of any objection.

Westvaco argues that we must declare the 1983 increase a nullity because (1) Westvaco's failure to object "upon receipt of Columbia's notice . . . could [not] waive the Commission's constitutional and statutory duty to prescribe changes in rates," (2) "[i]t is not lawful . . . for a utility to change a rate by simply

writing a letter to the [Commission]," (3) the notice Columbia gave was "false and misleading," and (4) the increase became effective without (a) compliance with filing requirements, and (b) action by the full Commission. Westvaco also suggests that the way the Commission approved the 37.3-cent increase denied it due process.

We reject out of hand Westvaco's argument that Columbia's notice of the proposed increase was "false and misleading." We also reject the remainder of Westvaco's argument. It appears that the Commission's approval of the 37.3-cent rate merely made effective through administrative process what previously had been formally authorized but, as a result of inadvertance, not put into effect. If there was any error in this process, it was harmless error.

■ Furthermore, during the taking of ore tenus evidence before the hearing examiner, Westvaco's counsel conceded that Westvaco "had notice of that new rate last year, and . . . didn't quarrel with it." Then, as Columbia notes on brief, when Westvaco decided to avail itself of Columbia's transportation service, it "entered into an agreement [with Columbia] and began to receive transportation service from Columbia at this rate." These facts, coupled with Westvaco's failure to object to the 37.3-cent rate until the last minute of the proceedings below, constitute a waiver of any error or lack of due process in the Commission's approval of the rate.

As indicated previously, we will affirm the order appealed from.

*Affirmed.*