## COMMONWEALTH GAS SERVICES, INC.

## V.

## REYNOLDS METALS COMPANY, ET AL.

Record No. 871333

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Harman, Retired Justice

*Stephen H. Watts, II (William G. Broaddus; Jacquelyn E. Stone; McGuire, Woods, Battle & Boothe*, on briefs), for appellant.

*Edward L. Flippen; Robert M. Gillespie (Philip C. Baxa; Kenneth A. Barry; Lewis S. Minter; Stewart E. Farrar; Anthony Gambardella; Mays and Valentine*, on briefs), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

This appeal of right challenges a State Corporation Commission (Commission) order entered in a general rate case that disallowed certain expenses incurred by a public service company as a result of charges made by "affiliated interest[s]," as defined by former Code § 56-76.

On May 2, 1986, Commonwealth Gas Services, Inc. (Services) filed an application with the Commission requesting an increase in annual revenues of $2,873,000 based on a test year ending December 31, 1985. The application represented the first filing of a

general rate case by Services since it became a subsidiary of the Columbia Gas System, Inc. (the Columbia System). Reynolds Metals Company (Reynolds) filed a Notice of Protest.

Among the expense items claimed by Services were charges made by Columbia Gas System Service Corporation (Service Corp.) of $575,760 and charges made by Commonwealth Gas Pipeline Corporation (Pipeline) of $159,251. Both Service Corp. and Pipeline are subsidiaries of Columbia System.

The full Commission, overturning a hearing examiner's finding, disallowed these expenses, concluding that Services had failed to meet its burden of proving that the expenses were reasonable. Services appeals from that portion of the Commission's order disallowing these expenses.

Services was formed in January 1980 by the merger of Commonwealth Gas Distribution Corporation and Portsmouth Gas Company. As a result of the merger, Services became a wholly-owned subsidiary of Commonwealth Natural Resources, Inc. In August 1981, Commonwealth Natural Resources, Inc. was acquired by and merged into Columbia System. Consequently, Services, along with Service Corp. and Pipeline, became separate subsidiaries of Columbia System, a diversified holding company engaged in the exploration, development, purchase, transmission, and distribution of natural gas.

In December 1981, the Commission approved a service agreement that allowed Services to receive and pay for various services provided by its sister subsidiary, Service Corp. Services also receives and pays for administrative, management, and other services provided by Pipeline.

The present general rate case, however, provided the Commission its first opportunity to scrutinize transactions between Services and other subsidiaries of Columbia System. Two previous rate increases, granted to Services in 1983, were granted pursuant to the limited procedure for expedited rate relief used in the Commission's Financial Operating Review (FOR) process; neither case, however, involved a challenge to charges paid by Services to its affiliates.

The Commission's Rules Governing Utility Rate Increase Applications and Annual Informational Filings, 1985 SCC Ann. Rpt. 478 (the Rate Case Rules), provide explicit instructions for submitting rate increase applications. The instructions for Schedule 24, Affiliate Transactions, require (1) "a narrative description of

the services received and/or provided for each type of affiliated transaction," (2) "a summary of all charges during the test period by affiliate, by month, and by type of transaction," and (3) a description of "the basis of the allocations for all such charges."

The Schedule 24 submitted by Services, however, contained only a limited and incomplete summary of charges from the Columbia System entities. Other pertinent schedules submitted by Services likewise failed to provide substantive support for the affiliate expenses. Further, none of the four witnesses who presented pre-filed testimony on Services' behalf furnished a narrative description of the affiliate charges, the services received, the benefits of such services, the reasonableness of such charges, or the basis for any inter-company cost allocations.

On October 24, 1986, approximately six weeks before the hearing, Reynolds pre-filed the testimony of its accounting witness, C. David Kirby. Kirby testified that Services had "failed to demonstrate that its proposed amounts of affiliated intercompany administrative and management charges are reasonable." In his testimony, Kirby pointed out the specific areas where Services had failed to provide support for the affiliate charges.

On December 2, 1986, Services filed the rebuttal testimony of Robert B. Wemyss, Jr. In his testimony, Wemyss did not address directly the reasonableness of the affiliate charges. Instead, he asserted that the previous acceptance by the Commission's staff (the Staff) of the service agreement between Services and Service Corp. was the definitive determination that the affiliate expenses were "consistent with the public interest." In response to that assertion, the Staff's accounting witness filed surrebuttal testimony, stating that "it is up to [Services] to prove public interest." The accounting witness explained that the "Staff merely annualized the booked expenses from the Columbia System and adjusted the allocation of expenses from . . . Pipeline." He further stated the Staff did not review Services' methodology for allocating costs between Pipeline and Services.

At the *ore tenus* hearing that commenced on December 11, 1986, Services presented additional rebuttal evidence concerning the "variety of services" it received from its affiliate arrangements with Service Corp. Services' witness, Wemyss, also stated that bills submitted by Services Corp. were "reviewed for accuracy, for comparative levels of charges relative to prior periods, and they are scrutinized on an individual job order basis."

On appeal, Services contends that the Commission erred in placing upon Services the burden of proving the reasonableness of affiliate expenses. While conceding that "the ultimate burden of proving the reasonableness of any expense remains with [a] utility," Services asserts that the issue of reasonableness "is not joined . . . until a substantive challenge is made to the reasonableness of the expense and evidence is presented to support that challenge." Only then, Services argues, must a utility "carry its burden of proof by presenting evidence demonstrating the reasonableness of the expense."

■ Code § 56-78 addresses the standards by which the Commission may determine whether affiliate expenses should be included or excluded in a proceeding involving utility rates. That section provides in pertinent part:

> In any proceeding . . . involving the rates . . . of any public service company, the Commission may exclude in whole or in part from the accounts of such public service company any payment or compensation to an affiliated interest for any services rendered or property or service furnished . . . under existing contracts or arrangements with such affiliated interest, if it shall appear and be established upon investigation that such payment or compensation or such contract or arrangement is not consistent with the public interest. In such proceeding any payment or compensation may be disapproved or disallowed by the Commission, in whole or in part, *unless satisfactory proof is submitted to the Commission of the cost to the affiliated interest* rendering the service or furnishing the property or service . . . .

(Emphasis added.)

The "satisfactory proof" of the costs to an affiliated interest that must be submitted to the Commission is explained in Code § 56-79.

> No proof shall be satisfactory, within the meaning of [Code § 56-78], unless it includes the original (or verified copies) of the relevant cost records and other relevant accounts of the affiliated interest, or such abstract thereof or summary taken therefrom, as the Commission may deem adequate, properly identified and duly authenticated; provided, however, that the Commission may, where reasonable, ap-

prove or disapprove such contracts or arrangements without the submission of such cost records or accounts.

A fundamental public policy underlies the stringent standard of proof enunciated in these statutes. The legislation makes clear that the General Assembly expects the Commission to scrutinize transactions between a utility and one of its affiliates. Such scrutiny is mandated because the contracting parties have a unity of interests and do not deal at arm's length. Thus, there exists the opportunity for double profit at the ratepayers' expense — a situation that does not exist when the parties to a transaction are independent of each other. The need for regulatory scrutiny of affiliate transactions has long been recognized. *See, e.g., Western Distributing Co. v. Public Service Commission of Kansas*, 285 U.S. 119 (1932).

Services relies upon our decisions in *Central Tel. Co. of Va. v. Corp. Comm.*, 219 Va. 863, 252 S.E.2d 575 (1979), and *Norfolk v. Chesapeake, etc., Tel. Co.*, 192 Va. 292, 64 S.E.2d 772 (1951), to support its position that "affirmative evidence of unreasonableness must be offered before the Commission may disallow any part of actually incurred expense." Services argues that absent such an affirmative showing of unreasonableness, a prior Commission determination that an affiliate transaction is in the public interest should stand. Services misreads the cases upon which it relies.

In both *Central Tel.* and *Norfolk*, the utilities had presented affirmative evidence that the affiliates' prices were as reasonable as those obtainable elsewhere. *Central Tel.*, 219 Va. at 880, 252 S.E.2d at 585; *Norfolk*, 192 Va. at 317, 64 S.E.2d at 786-87. In the present case, however, Services presented no evidence of comparative prices or affiliate profits. Services' evidence merely itemized the affiliate charges and described how Services reviews and pays affiliate bills.

Services apparently thought it unnecessary to present such evidence, choosing instead to rely upon the Commission's previous approval of the service agreement and the Commission's allowance of affiliate expenses in prior expedited rate relief cases processed under the Commission's FOR procedures. We conclude that Services has misplaced its reliance.

In the first place, the Commission's approval of a service agreement pursuant to Code § 56-77 is not equivalent to a finding

that the affiliate costs have been proved satisfactorily under Code §§ 56-78 and -79. Approval of a service agreement simply is a determination that the structure of the arrangement is in the public interest. *Roanoke Gas Co. v. Commonwealth*, 217 Va. 850, 234 S.E.2d 302 (1977). Indeed, the Commission's order approving the service agreement between Services and Service Corp. specifically provides that "the approval granted herein shall not preclude the Commission from applying the provisions of Section 56-78 hereafter."

█ Secondly, the Commission's allowance of affiliate expenses in the two prior FOR proceedings does not provide support for the reasonableness of affiliate charges in this general rate case. FOR proceedings are limited to certain narrowly-defined issues and, therefore, differ from the broad nature of a general rate case. *Westvaco v. Columbia Gas*, 230 Va. 451, 454-55, 339 S.E.2d 170, 172 (1986); *Roanoke Gas v. Corporation Comm.*, 225 Va. 186, 188, 300 S.E.2d 785, 786 (1983).

█ We hold, therefore, that the burden was upon Services to produce affirmative evidence of the reasonableness of affiliate charges, rather than upon Reynolds to demonstrate the unreasonableness of the charges, in the first instance. From an examination of the record, we further conclude that Services failed to produce any affirmative evidence to demonstrate that the affiliate charges were reasonable.

Finally, Services contends that the Commission erred in disallowing $159,251 of expenses paid to Pipeline because Pipeline was not an "affiliated interest" as defined by Code § 56-76. Until July 1987, that section expressly excluded from the definition of "affiliated interest" entities that were "subject to the jurisdiction of the Commission."* During the time period in question, Pipeline was such an entity. Services argues, therefore, that even if a stringent standard of proof applies to the charges of Service Corp., an affiliated interest, such a standard would not apply to the charges of Pipeline, an unaffiliated interest. We reject this argument.

█ Pipeline and Services are both owned by the parent corporation, Columbia System. Although Pipeline was not technically an "affiliated interest" within the meaning of the statute, it is in the same corporate family as Services. Thus, transactions between Services and Pipeline are not conducted at arm's length. Although

---

* This exclusion was eliminated effective July 1, 1987. *See* Acts 1987, c. 385.

Code §§ 56-78 and -79 apply the stricter standard of proof only to an "affiliated interest," nothing in Title 56 prohibits the Commission from applying the same standard of proof to expenses of a non-independent vendor such as Pipeline. Indeed, the public policy requiring careful scrutiny of transactions between entities that have a unity of ownership applies with equal force to Pipeline as it does to Services Corp., and we conclude that the Commission did not err in so ruling.

In sum, we hold that the Commission correctly placed upon Services the burden of proving the reasonableness of the charges made by both Service Corp. and Pipeline. We further hold that the Commission correctly concluded that the record is devoid of any evidence that the charges were reasonable. Accordingly, we will affirm the Commission's order.

*Affirmed.*